UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISA U.S.A., INC.,<br><br>    Plaintiff,<br><br>    v.<br><br>FIRST DATA CORPORATION, *et al.*,<br><br>    Defendants.<br>_____/ | No. C-02-1786 JSW (EMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL DEFENDANT TO COMPLY WITH PROTECTIVE ORDER**<br>**(Docket No. 633)** |

    Having considered the parties' briefs and accompanying submissions, as well as the oral argument of counsel, the Court hereby GRANTS in part and DENIES in part Visa's motion to compel First Data to comply with the protective order.

### I.   DISCUSSION

    Visa has filed a motion in which it asks the Court to order First Data to comply with the protective order in the case. According to Visa, it produced Accenture-related documents to First Data in compliance with the Court's previous order of August 23, 2004. *See* Docket No. 352 (order, filed on 8/23/04). However, Visa later discovered that the Court appeared to have made a mistake in ordering some of the documents to be produced, more specifically, documents titled (1) "Private Arrangement Analysis -- MasterCard Comparison," (2) "Private Arrangement Analysis -- FDC 'Business As Usual' Considerations," and (3) "Private Arrangement Analysis -- EU Comparison." For purposes of convenience, the Court shall hereinafter refer to these documents as the MasterCard document, the Business As Usual document, and the EU document.

A. <u>Applicability of Work Product Privilege</u>

The Court need not address whether or not the protective order applies to the three documents at issue and the consequential procedure for return or retention of the documents. The ultimate question for the Court is a substantive one: whether the documents are protected by the work product privilege.

In addressing this question, the Court begins by noting that it did make a mistake in its previous order of August 23, 2004. That is, in that order, the Court mistakenly believed that the disputed documents were not attached to any declaration and, based on the description of the documents from the privilege log, assigned the documents to the category of "Drafts of Private Arrangement Analysis," *see* Order of 8/23/04, at 9, rather to the category of "Reports Requested by Mr. Popofsky," which the Court deemed protected by the work product privilege. Clearly, the Court intended the documents would be protected under the 8/23/04 order.

First Data argues that subsequently obtained evidence demonstrates that the documents are not in fact protected by the work product privilege because: (1) Visa executives (and not counsel) asked Accenture to prepare the documents and (2) Accenture did not even know about the litigation between Visa and First Data. These arguments are not persuasive.

Regarding (1), Mr. Popofsky previously declared that he asked Visa to provide its attorneys with information about three factual issues that they believed would be important in defending Visa in the litigation with First Data. *See* Popofsky Decl. ¶ 8 ("Sometime prior to Visa's ultimate decision to prohibit new private arrangements, I asked Visa to provide me and the other attorneys working on the litigation [with] information about three factual issues that I believed would be important in defending Visa in the litigation."). That the Visa executives (instead of Mr. Popofsky directly) then asked Accenture to prepare the documents does not mean that the documents were no longer being prepared in anticipation of litigation. *See* Fed. R. Civ. P. 26(b)(3) (noting that work product privilege covers documents prepared in anticipation of litigation by or for a party, or by or for a party's representative); *cf. Carter v. Cornell Univ.*, 173 F.R.D. 92, 94 (S.D.N.Y. 1997) (in discussing attorney-client privilege, noting that employee was acting as agent for attorney because she conducted the interviews at issue at the request of counsel and for the exclusive use of counsel in

2

1  rendering legal representation).  The issue is not who ultimately retained Accenture but why.  First
2  Data has produced no convincing evidence dispelling Mr. Popofsky's declaration that the impetus
3  came from outside counsel for purposes of litigation.
4      Regarding (2), it does not matter that Accenture did not specifically know that the documents
5  were being prepared in anticipation of litigation -- so long as litigation was in fact the impetus and
6  Accenture maintained the confidentiality of the documents.
7      In sum, even given the evidence presented by First Data, the documents at issue are still
8  protected by the work product privilege because, in the first instance, they were prepared under the
9  direction of counsel, Mr. Popofsky, for the purpose of rendering legal advice in anticipation of
10 litigation.  That the documents may ultimately have had a dual purpose does not change the Court's
11 earlier conclusion.  As the Court stated in its previous order of August 23, 2004, "[t]o the extent
12 these documents may have informed the business analysis as well, these reports did not have a
13 readily separable purpose unrelated to the provision of legal advice.  Thus, the documents are
14 protected from disclosure."  Order of 8/23/04, at 13.

15 B.    <u>Waiver of Work Product Privilege</u>

16     First Data argues, however, that, even if the documents are protected by the work product
17 privilege, Visa waived that privilege.  The Court agrees with respect to the MasterCard document
18 and the Business As Usual document.  More specifically, the Court finds that Visa has waived the
19 privilege with respect to these two documents based on voluntary disclosure to First Data.
20     Given that Visa voluntarily produced summaries of the MasterCard and Business As Usual
21 documents to First Data  -- its *adversary* in this case -- Visa has waived the work product privilege
22 with respect to the actual documents themselves.  Notably, even the case on which Visa relies,
23 *Granite Partners, L.P. v. Bear, Stearns & Co., Inc.*, 184 F.R.D. 49, 54 (S.D.N.Y. 1999), states that
24 the work product privilege is waived when a party to a lawsuit treats the document in a way that is
25 inconsistent with the principles underlying the doctrine of the privilege.  *See also United States v.*
26 *Massachusetts Inst. of Tech.*, 129 F.3d 681, 687 (5th Cir. 1997) (noting that many circuits have
27 adopted the rule, in some form, that disclosure of work product "in a way inconsistent with keeping
28 it from an adversary waives work product protection"); *Bank of America, N.A., v. Terra Nova Ins.*

1  *Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002) (waiver of work product when materials used in a manner
2  inconsistent with work product protection such as disclosure to adversary).

3      Visa's suggestion that First Data should be content with the summaries rather than the actual
4  documents is not convincing. Where "important" and "significant" portions of the documents are
5  disclosed, a party cannot reasonably expect to preserve confidentiality of that work product. *See*
6  *Kintera, Inc. v. Convio, Inc.*, 219 F.R.D. 503, 513 (S.D. Cal. 2003); *Bank of America, N.A.*, *supra*,
7  212 F.R.D. at 174-75 (S.D.N.Y. 2002) (all information available to person making oral presentation
8  to governmental authorities (which constituted a waiver) must be available, including documents
9  relating to investigation in his possession at time).

## II.   CONCLUSION

For the foregoing reasons, the Court hereby grants in part and denies in part Visa's motion to compel. The work product privilege continues to apply to the EU document, and First Data shall promptly return to Visa any and all copies of the EU document. However, Visa has waived the work product privilege with respect to the MasterCard document and the Business As Usual document.

This order disposes of Docket No. 633.

IT IS SO ORDERED.

Dated: April 29, 2005

                                                  /s/
                                EDWARD M. CHEN
                                United States Magistrate Judge