UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISA U.S.A., INC.,<br><br>        Plaintiff,<br><br>    v.<br><br>FIRST DATA CORPORATION, *et al.*,<br><br>        Defendants.<br>_____/ | No. C-02-1786 JSW (EMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL COMPLIANCE WITH DISCOVERY OBLIGATIONS<br>(Docket Nos. 781)** |

       Visa has filed a motion to compel, asking the Court to order First Data to comply with its discovery obligations. Visa also asks the Court to allow it to conduct additional discovery after First Data has complied with its discovery obligations. *See* Mot. at 3 (asking for 30(b)(6) deposition, five RFAs, and five interrogatories). Having considered the parties' briefs and accompanying submissions, as well as the parties' joint letter of August 4, 2005, the Court hereby GRANTS in part and DENIES in part Visa's motion to compel.

**I. DISCUSSION**

       As a preliminary matter, the Court notes that, in balancing the benefit and burden of discovery, it does take into account the fact that Visa has had notice of the interchange damages theory for several months, if not from the interrogatory response provided by First Data in January 2005, then from the discovery sought by First Data between December 2004 and April 2005 and/or the hearing before this Court in March 2005. Moreover, Visa likely understood that there was a damages theory based on interchange fees given a letter dated February 23, 2005, from counsel for Visa to counsel for First Data, stating that one of the topics for First Data's 30(b)(6) witness on

damages would be "[t]he actual or potential impact of intraprocessing of Visa-branded transactions on First Data's ability to sell other products/services (including without limitation . . . bilateral interchange and loyalty programs) to issuing bank, acquiring banks, or merchants." Shah Decl., Ex. T (letter from R. Mooney to B. Parker, dated 2/23/05). However, Visa did not file any motion to compel related to the interchange damages theory until the end of June 2005.

On the other hand, the Court also takes into account the fact that the bulk of the damages sought by First Data is based on the interchange damages theory and that amount consists of millions of dollars.

Given the considerations above, as well as others, this Court's rulings below are largely guided by the question of whether the discovery sought is or may be key or critical discovery.

A.  <u>Records of actual payment by First Data of any interchange fees</u>

In its opposition, First Data states that it will "provide Visa back up data for the written summary of interchange paid to Visa during the relevant time period (upon which First Data's damages expert relies)." *See* Opp'n at 6. In the parties' joint letter, First Data further states that it will prepare and produce an interchange database report ("IDR"). The Court therefore deems this dispute moot. Visa asserts the right to seek further relief if, after receiving the IDR, it believes the report to be insufficient or inadequate. The Court shall not make any predetermination as to the merits of any such argument.

B.  <u>Communications with merchants or acquiring banks</u>

There appears to be two contested categories here: (1) correspondence between First Data and merchants or acquiring banks about interchange and (2) marketing materials about how interchange is treated. Regarding (1), First Data states that "there is no *regular* correspondence between First Data and acquiring banks regarding interchange or how interchange is treated." Joint letter of 8/4/05, at 8 (emphasis added). Regarding (2), First Data states that it has already produced all marketing materials "that relate to intraprocessing through First Data Net." *Id.*

Even if there were no regular correspondence, that does not mean that there was no correspondence between First Data and acquiring banks regarding interchange. On the other hand, it would be unduly burdensome for First Data to search for responsive documents with respect to each

and every acquiring bank with which it has relations. To balance the benefit and burden of discovery, the Court orders Visa to identify 25 acquiring banks with which First Data has relations and, for those banks, First Data shall look for correspondence regarding interchange.

As for marketing materials, the scope of First Data's production of marketing materials related to intraprocessing is unclear. The issue here is the marketing related to how interchange is treated. Accordingly, the Court orders First Data to search for responsive documents (if any) which constitute marketing materials about interchange.

C. <u>Documents related to any change (increase or decrease) in interchange</u>

This dispute has been resolved and is therefore moot.

D. <u>Agreements under which First Data purportedly acquired portfolios of merchant rights</u>

This dispute has been resolved and is therefore moot.

E. <u>Some accounting of each of First Data's agreements with merchants</u>

The Court shall not require First Data to fill in the blanks for the form agreements provided. Nor shall the Court require First Data to match each merchant with which it has relations with each form agreement or other exemplar. This would be unduly burdensome given the number of merchants with which First Data has relations. However, First Data must provide each and every type of merchant agreement if it has not done so already.

First Data shall also produce to Visa 50 of the actual merchant agreements for 50 merchants identified by Visa. It is not an undue burden for First Data given the magnitude of the stakes. Any request by First Data for a quid pro quo is irrelevant to the burden analysis.

F. <u>All other documents reflecting First Data's claim to be an "acquirer" for purposes of Visa's transactions</u>

It seems that, if First Data does produce some examples of merchant agreements, then Visa should be able to get its answer here. However, the Court shall order First Data to produce documents *sufficient* to establish that First Data is an acquirer. This may or may not be limited to the merchant agreements.

G. <u>Documents reflecting First Data's relationship with CSI</u>

In its motion, Visa asked only for documents reflecting First Data's relationship CSI, not with *any* entity First Data is claiming damages "through." Therefore, the Court shall not order First Data to produce documents related to its relationship with any entity. The Court notes that, to the extent there are additional entities through which First Data is claiming damages, documents demonstrating First Data's ability to get damages related to those entities likely would have been produced as part of initial disclosures (*i.e.*, to support First Data's claim for damages).

H. <u>Documents related to any bilateral agreements facilitated by First Data for MasterCard transactions, including any documents reflecting any change in interchange as a result of such agreements</u>

This dispute appears to have been resolved and is therefore moot.

I. <u>Documentary evidence on alleged "processing fees overcharge"</u>

First Data should submit a declaration, certifying that its processing fees overcharge theory is based only on invoices sent from Visa directly to First Data.

J. <u>Additional discovery related to interchange damages theory</u>

Previously, the Court indicated that it would allow an additional 30(b)(6) deposition on the interchange damages theory but would not allow additional interrogatories or RFAs as the 30(b)(6) deposition should be sufficient. The parties now dispute whether there should be an additional 30(b)(6) deposition as well as the scope of that deposition.

Even though, as noted above, Visa previously noticed a 30(b)(6) deposition that encompassed the interchange damages theory but, for whatever reason, did not specifically ask the 30(b)(6) witness about interchange fees, the Court shall still allow an additional 30(b)(6) deposition because of (1) the importance of the damages theory (interchange-related fees make up the bulk of the damages claim) and (2) the fact that First Data shall be producing additional documents related to the theory. It is premature at this time for the Court to determine the exact scope of the deposition because documents have not yet been produced. However, as guidance to the parties, the Court is inclined to permit the deposition to cover subject matters raised by the documents that will be produced and shall be focused on First Data's damages theory based on interchange fees.

///

## II. CONCLUSION

For the foregoing reasons, Visa's motion to compel is granted in part and denied in part. This order disposes of Docket No. 781.

IT IS SO ORDERED.

Dated: August 5, 2005

EDWARD M. CHEN
United States Magistrate Judge