IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISA U.S.A. INC., a Delaware corporation,<br><br>    Plaintiff and Counterdefendant,<br><br>v.<br><br>FIRST DATA CORPORATION, a Delaware corporation; FIRST DATA RESOURCES, INC., a Delaware corporation; and FIRST DATA MERCHANT SERVICES CORPORATION, a Florida corporation,<br><br>    Defendants and Counterclaimants. | No. C 02-01786 JSW<br><br>**ORDER GRANTING FIRST DATA'S MOTION FOR PARTIAL SUMMARY JUDGMENT OF VISA'S TRADEMARK CLAIMS** |

Now before the Court is First Data Corporation ("First Data)'s motion for partial summary judgment of Visa's trademark claims. Having carefully read the parties' papers and considered the arguments and the relevant legal authority, the Court hereby GRANTS First Data's motion. The Court finds that Visa, U.S.A., Inc. (Visa, U.S.A.") lacks standing under both 15 U.S.C. § 1114 for trademark infringement and under 15 U.S.C. § 1525(a) for unfair competition.

## BACKGROUND

On April 15, 2002, Visa, U.S.A. brought this action against First Data to prevent its allegedly unauthorized use of the Visa payment system to operate a new private arrangement in the United States which would, effectively, bypass Visa's own system, VisaNet, for the authorization, clearing and settling of Visa transactions. The original and first amended complaint includes three separate claims for violations of the Lanham Act: (1) trademark

infringement under 15 U.S.C. § 1114; (2) trademark dilution under 15 U.S.C. § 1525(c); and (3) false designation of origin and false impression of association ("unfair competition") under 15 U.S.C. § 1125(a). Only the infringement and unfair competition claims are the subject of this motion, as Visa has agreed to withdraw its claim for trademark dilution.[1] Visa, U.S.A. sued over the use of the marks used in connection with the Visa payment system, including the word mark "VISA" and a design mark consisting of horizontal blue, white and gold bands (the "VISA Marks"). (Declaration of Joanna D. Malaczynski in Support of Visa U.S.A.'s Opposition ("Malaczynski Decl."), Ex. A (First Amended Complaint), ¶ 11.)

The complaint also clearly states that Visa International, who is not a party to this action, is the owner of the marks at issue. (*See id.*) Visa, U.S.A. represented in the complaint that Visa International had granted it the right to enforce the VISA Marks in the United States with respect to First Data's private arrangement application and the subject of the complaint. (*See id.* at ¶ 13.) The operative license agreement between Visa International and Visa, U.S.A. indicates that Visa, U.S.A. has a "nonexclusive, nontransferable license to use [Visa International's] marks" in the United States. (*See* Declaration of Aaron Schur ("Schur Decl."), Ex. N (1977 license agreement), ¶ 1.) The license agreement also provides that Visa, U.S.A. acknowledges that the ownership of the marks remains with Visa International and that all use of the marks by Visa, U.S.A. shall inure to the benefit of and be on behalf of Visa International. (*Id.*, ¶ 2.) Lastly, the license agreement provides that Visa International "shall have the sole right to engage in infringement or unfair competition proceedings involving" the VISA Marks. (*Id.*, ¶ 6.)

In the course of discovery, Visa U.S.A. produced an October 10, 2002 letter, created six months after the filing of the original complaint, which purports to memorialize an oral agreement whereby Visa International consented to Visa, U.S.A.'s engagement in the current suit alleging trademark infringement and related causes of action against First Data. The letter sets out that Visa International agrees to the current lawsuit in consideration of Visa, U.S.A.'s

---

[1] In addition, the remaining claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief are not at issue here.

2

1  agreement to indemnify Visa International against any claims or obligations arising out of this
2  trademark action.  (Schur Decl., Ex. O.)  The letter purports to reduce to writing the prior oral
3  authorization by Visa International to institute the lawsuit.  (*See* Declaration of Paul A. Allen in
4  Support of Visa, U.S.A.'s Opposition, ¶ 6; Declaration of Guy Rounsaville, ¶¶ 5-6.)

**ANALYSIS**

**A.     Legal Standard on Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims.  *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial.  *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets his or her initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  In order to make this showing, the non-moving party must "identify with reasonable particularity the evidence that precludes summary judgment."  *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996).  It is not the Court's task to "scour the record in search of a genuine issue of triable fact."  *Id.* (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995).  If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law.  *Celotex*, 477 U.S. at 323.

An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

**B.     Trademark Standing.**

First Data contends that Visa, U.S.A. lacks standing to assert its trademark claims under both Section 32 and 43 of the Lanham Act, for trademark infringement and false designation of origin and false impression of association, because it is merely a non-exclusive licensee and not the registrant of the marks at issue. Visa, U.S.A. contends that it has standing to sue on Visa International's trademarks because it is a licensee of the VISA Marks, is responsible for monitoring compliance with the marks in the United States, and is a close corporate affiliate of Visa International.

Standing is "an essential . . . part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Visa, U.S.A. bears the burden of proving the existence of standing to sue. *See, e.g., United States v. Hays*, 515 U.S. 737, 743 (1995). The statutory property right in a trademark is not simply the right to make or use the trademark, but to do so to the exclusion of others. *International Society for Krishna Consciousness of Western Pennsylvania v. Stadium Authority*, 479 F. Supp. 792, 797 (W.D. Pa. 1979) (citations omitted).

**C.     Standing Under Section 32 of the Lanham Act.**

Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), creates a cause of action for a trademark "registrant" when a defendant uses a registered trademark without consent. Section 32 permits standing to sue for trademark infringement by the registrant of the mark, which, by statute, includes the legal representatives, predecessors, successors, and assigns of the registrant. 15 U.S.C. § 1127. Assignment of trademark rights is carefully circumscribed by

statute, complete with writing and recording requirements. *International Society for Krishna Consciousness*, 479 F. Supp. at 797 (citations omitted).

Here, Visa, U.S.A. maintains that it has standing to sue First Data on the basis that it is a licensee of the VISA Marks, it monitors compliance with the marks in the United States, and is a close corporate affiliate of the registrant, Visa International. (Opp. Br. at 1.) As a matter of law, such status is insufficient to afford Visa, U.S.A. standing to sue under Section 32. Visa, U.S.A. cannot maintain standing as a licensee because it does not operate as an exclusive licensee with sufficient property rights in the mark. Further, its claims of responsibility for monitoring the mark and its status as a close corporate affiliate with the registrant do not confer standing under Section 32.[2]

### 1. Parties' Agreements Do Not Confer Visa, U.S.A. Standing as an Exclusive Licensee With Property Rights.

The determination of whether a licensee has standing to sue under Section 32 largely depends upon the rights granted to the licensee under the licensing agreement. *See, e.g., Ultrapure Systems, Inc. v. Ham-let Group*, 921 F. Supp. 659, 665 (N.D. Cal. 1996). Standing may exist where the licensing agreement both grants an exclusive license and grants to the exclusive licensee a property interest in the trademark, or rights that amount to those of an assignee. *See, e.g., id.* at 665-66; *accord* Restatement (Third) of Unfair Competition § 33 cmt. d (1995) (licensees are precluded from maintaining an action under Section 32 unless the transaction can be characterized as an assignment). "Where a licensing agreement does not grant the licensee a property interest in the mark or otherwise assign to the licensee the registrant-licensor's ownership rights, the licensee, even if exclusive, cannot enforce the mark under [Section 32]." *Ultrapure Systems*, 921 F. Supp. at 665 (finding property interests were

---

[2] To the extent Visa, U.S.A. operates as a related company under the Lanham Act of Visa International, Visa, U.S.A.'s use of the mark must at all times "inure to the benefit of the registrant." *See* 15 U.S.C. §§ 1127, 1055. In fact, Visa, U.S.A.'s own operating regulations mirror this requirement by providing that each Visa member must agree that "the use of all Visa-Owned marks must be for the benefit of, and on behalf of, Visa International." (Schur Decl. Ex. S (Visa, U.S.A., Inc. Operating Regulations Vol. 1 General Rules § 1.8.A.1 (May 15, 2004).) Thus, Visa, U.S.A.'s status as a close corporate affiliate to Visa International only further underscores the trademark ownership rights vested in Visa International.

5

transferred to licensee that amounted to an assignment where the contract in fact bestowed exclusive use of the trademarks and did not set forth any restrictions on the licensee's ability to enforce the trademarks).

Where the license is non-exclusive, the licensee does not have standing to bring an infringement action. *See id.* (citing *Quabang Rubber Co. v. Fabiano Shoe Co.*, 567 F.2d 154, 159-160 (1st Cir. 1977)); *see also Krishna Consciousness*, 479 F. Supp. at 797. In addition, the licensee lacks standing where the provisions in the agreement indicate that the licensor retains exclusive ownership of the mark or where the licensor retains exclusive rights to enforce the trademark. *Id.* (citing *DEP Corp. v. Interstate Cigar Co.*, 622 F.2d 621, 623 (2nd Cir. 1980)).

Visa, U.S.A., as a non-exclusive licensee without property rights to the VISA Marks, cannot meet the statutory definition of "registrant" for the purpose of establishing standing to sue under Section 32. The undisputed evidence establishes that under the operative license agreement, Visa, U.S.A. is a non-exclusive licensee without significant property rights to the VISA mark. (*See* Schur Decl., Ex. N, ¶ 6.) The subsequent modification of the Visa entities' agreement – whether it be the oral authorization to file suit or the October 2002 letter which followed – does not change the fact that Visa U.S.A. never retained an exclusive license nor significant property rights which could legitimately be characterized as an assignment. (*See* Declaration of Paul A. Allen in Support of Visa, U.S.A.'s Opposition, Ex. B (October 2002 letter), ¶ 6; Declaration of Guy Rounsaville, ¶¶ 5-6, Ex. A.)

**2.      The Parties' Agreements Do Not Confer Standing on Visa, U.S.A. as a Legal Representative of Visa International.**

Visa, U.S.A. also contends that, even in the absence of an exclusive license, it has standing to sue First Data as Visa International's legal representative. A licensee may be considered a legal representative where the agreements between the parties expressly provide the licensee with a right and duty to sue on all issues relating to the trademark. *See, e.g., Silverstar Enterprises, Inc. v. Aday*, 537 F. Supp. 236, 240 n.4 (S.D.N.Y. 1982) (status as legal representative remotely conceivable where licensee was appointed as licensor's "attorney-in-fact for preventing and prosecuting any such unauthorized sale or use"); *see also Idaho Potato Comm'n v. Washington Potato Comm'n*, 410 F. Supp. 171, 174 (D. Idaho 1975) (legal

6

1  representative status existed where statute compelled plaintiff to stand in place of registrant and
2  represent its interests "at any and all times").

3        Even assuming the October 2002 letter confers ostensible authorization to file suit in
4  this matter, or even assuming that it ratifies the previous oral authorization to do the same, there
5  is no dispute that the 1977 license agreement remains unchanged insofar as Visa International
6  has continued to protect its own trademark interests in all but two lawsuits for trademark
7  violations. Further, it is uncontested that Visa International retains rights to protect its marks in
8  the United States, outside of this litigation. (*See, e.g.*, Declaration of Susan Welch in Support of
9  First Data's Reply, Ex. C (Visa International Press Releases).) Visa International has not
10 relinquished its property or enforcement rights to Visa, U.S.A. Therefore, Visa, U.S.A. cannot
11 maintain the status of legal representative for the unique purpose of conferring upon itself
12 standing to sue in this limited circumstance. Just as Visa, U.S.A. does not have standing to sue
13 as an exclusive licensee because it does not have exclusive property rights to the disputed
14 marks, it cannot maintain standing to sue as a legal representative because it does not have
15 exclusive enforcement rights to the disputed marks.[3]

**D.**    **Standing Under Section 43 of the Lanham Act.**

17       Section 43(a) of the Lanham Act, 15 U.S.C. § 1525(a), creates a cause of action for "any
18 person who believes that he or she is likely to be damaged" by a defendant's false designations
19 of origin and misleading representations of fact that are likely to cause confusion as to origin or
20 sponsorship.

21       Although the standing requirements to bring an unfair competition claim under Section
22 43(a) are less stringent than those required for trademark infringement, the Court finds that
23 Visa, U.S.A. lacks standing to sue because the license agreement specifically provides that Visa
24 International retains the sole right to engage in unfair competition proceedings involving the

---

[3] In fact, as established at oral argument before this Court, the record is undisputed that Visa International has not relinquished its rights to sue First Data for the same conduct upon which Visa, U.S.A. maintains its trademark infringement cause of action. Neither alleged modification of the parties' license agreement – the oral modification or the later written ratification – indicate that Visa International could not sue First Data to enforce its marks. The mere fact that Visa International has not yet actually sued First Data or joined in this matter is legally inconsequential.

7

VISA Marks. (Schur Decl., Ex. N, ¶ 6.) Thus, the express terms of the contract between Visa, U.S.A. and Visa International prohibit Visa, U.S.A. from bringing suit in its own capacity. *See Finance Investment Co. (Bermuda) v. Geberit AG*, 165 F.3d 526, 532 (9th Cir. 1998) (holding that a licensee's standing to sue under Section 43(a) must stem from the license agreement as the "sole source giving the [licensee] any interest in the mark"); *see also Nakajima All Co. v. SL Ventures, Corp.*, 2001 WL 641415, *2 (N.D. Ill. June 3, 2001) (unpublished decision holding that licensee had standing to sue for unfair competition where licensee received permission to sue, "*pursuant* to the license agreement between the [licensee and licensor]") (emphasis added).

Here, although Visa, U.S.A. contends that it received authorization to sue in this particular circumstance, the license agreement which operates to confer the trademark rights of the parties, specifically and expressly forbids the litigation of the VISA marks by Visa, U.S.A. There is no mechanism in the license agreement (or the alleged oral authorization which followed, or its later written ratification) which functions to enable Visa International to pass along its sole right to sue on to Visa, U.S.A., and there has been no evidence in the record to suggest that such a transfer of rights was attempted.

Lastly, because there has not been a complete transfer of the sole rights to litigate, there has not been a fully executed modification of the original license agreement. To be a valid oral modification of the written license agreement, the new agreement must be either supported by consideration or fully performed. *See* Cal. Civ. Code § 1698. There is no consideration to support the alleged modification, and the parties have not succeeded in performing a transfer of the right to sue. The alleged authorization to commence a lawsuit does not actually require performance from either party and fails to constitute a valid, executed oral agreement. *See Columbia Casualty Co. v. Lewis*, 14 Cal. App. 2d 64, 72 (1936) (holding that execution of an oral agreement, which may be proved for the purpose of altering a previous written contract, "must consist in doing or suffering of something not required to be done or suffered by terms of the writing"). Visa, U.S.A. has not introduced any evidence to demonstrate that the oral authorization to commence this lawsuit was executed by virtue of the doing or suffering of something not required. Again, the undisputed fact that Visa International could still sue First

8

1  Data over the same conduct at issue in this lawsuit demonstrates that the alleged modification of
2  the license agreement has not been fully executed.  Because the parties' license agreement –
3  which is still in full force and from which all trademark rights as between the parties is derived
4  – reserves to Visa International the sole right to engage in both trademark infringement and
5  unfair competition proceedings, Visa, U.S.A. lacks standing to sue under the Lanham Action
6  Section 43(a).  *See Geberit AG*, 165 F.3d at 532.

## CONCLUSION

For the foregoing reasons, the Court HEREBY GRANTS First Data's motion for partial summary judgment.  The Court finds that Visa, U.S.A. lacks standing under both 15 U.S.C. § 1114 for trademark infringement and under 15 U.S.C. § 1525(a) for unfair competition and those claims are HEREBY DISMISSED.

**IT IS SO ORDERED.**

Dated:  August 16, 2005

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE