IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISA U.S.A. INC., a Delaware corporation,<br><br>    Plaintiff and Counterdefendant,<br><br>v.<br><br>FIRST DATA CORPORATION, a Delaware corporation; FIRST DATA RESOURCES, INC., a Delaware corporation; and FIRST DATA MERCHANT SERVICES CORPORATION, a Florida corporation,<br><br>    Defendants and Counterclaimants.<br>_____/ | No. C 02-01786 JSW<br><br>**TENTATIVE RULING AND QUESTIONS RE VISA'S MOTION FOR PARTIAL SUMMARY JUDGMENT** |

    TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE OF THE FOLLOWING **TENTATIVE** RULING AND QUESTIONS FOR THE HEARING SCHEDULED ON DECEMBER 6, 2005 AT 9:00 A.M.:

    The Court has reviewed the parties' papers and, thus, does not wish to hear the parties reargue matters addressed in those pleadings.  If the parties intend to rely on authorities not cited in their briefs, they are ORDERED to notify the Court and opposing counsel of these authorities reasonably in advance of the hearing and to make copies available at the hearing.  If the parties submit such additional authorities, they are ORDERED to submit the citations to the authorities only, without argument or additional briefing.  *See* N.D. Civ. L.R. 7-3(d).  The parties will be given the opportunity at oral argument to explain their reliance on such authority.

    The Court **tentatively** DENIES Visa's motion for partial summary judgment.

The parties shall have 25 minutes to address the following questions:

1. What is the purported relationship between Visa's Operating Regulations and the ban on intra-processing? Is the targeted Regulation aimed at honoring all cards presented to merchants (Visa Operating Regulation 5.2.D.2) or is it aimed at prohibiting merchants from offering discounts at the point of sale (Visa Operating Regulation 5.2.D.3)? If it is Section 5.2.D.3, what is an Affinity card? What is First Data's theory of the relationship and how it gives rise to antitrust claims? Does Visa impermissibly parse the claims in the complaint?

2. What party, if any, does Visa contend has standing to pursue an antitrust claim against them for alleged interchange overcharge practices? This Court has held that merchants are indirect purchasers and therefore lack standing under *Illinois Brick v. Illinois*, 431 U.S. 720 (1977). *See Kendall v. Visa, U.S.A., Inc.*, C 04-4276 JSW, 2005 U.S. Dist. LEXIS 21450 (July 25, 2005). Visa contends that the practices alleged by First Data harm merchants, not acquirers. What party in the transaction has standing to allege antitrust violations against Visa?

3. Visa argues that the actual transaction at issue here occurs between an issuer and merchant, and therefore First Data, if considered an acquirer, does not have standing to pursue the claim against overcharging interchange fees. If a credit card transaction necessarily includes the acquirers who pay the interchange fees, is Visa's segregation of the integral transactions a supportable legal position?

4. In its Order in *Kendall*, this Court held that both acquiring banks and processing agents would have standing to allege antitrust violations with regard to the setting of interchange fees. Does First Data maintain that it has standing only as an acquirer, or also as a processor?

5. What are the parties' positions on the relevant market here for First Data's damages claims?

6. How does First Data sustain its attempt to monopolize claim for debit transactions where the successful elimination of intraprocessing may only increase Visa's share of putative market by 2%?

7. Do the parties have anything further they wish to address?

**IT IS SO ORDERED.**

Dated: December 7, 2005

_____
JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE