NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VISA U.S.A. INC., a Delaware corporation,<br><br>  Plaintiff and Counterdefendant,<br><br>  v.<br><br>FIRST DATA CORPORATION, a Delaware corporation; FIRST DATA RESOURCES, INC., a Delaware corporation; and FIRST DATA MERCHANT SERVICES CORPORATION, a Florida corporation,<br><br>  Defendants and Counterclaimants.<br>_____ / | No. C 02-01786 JSW<br><br>**ORDER GRANTING FIRST DATA'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON VISA'S SINGLE ENTITY AFFIRMATIVE DEFENSE AND GRANTING SUMMARY JUDGMENT ON VISA'S REMAINING CLAIMS** |

Now before the Court is the motion by First Data Corporation, First Data Resources, Inc., First Data Merchant Services Corporation, and Unified Merchant Services (collectively "First Data") for partial summary judgment on Visa U.S.A., Inc.'s ("Visa") affirmative defense that Visa is a single entity as to authorization, clearing and settlement of Visa transactions, and for summary judgment on Visa's remaining claims for breach of contract, breach of the covenant of good faith and fair dealing, and declaratory relief. Having carefully read the parties' papers and considered the arguments and the relevant legal authority, the Court hereby GRANTS First Data's motion for partial summary judgment on Visa's single entity affirmative defense and GRANTS First Data's motion for summary judgment as to the remaining claims.

**BACKGROUND**

The parties and the Court are familiar with the general background facts and the structure and function of the Visa system. The dynamics of the authorization, clearing and settlement ("ACS") system have been fully elucidated in the Court's previous order dated August 16, 2005, denying Visa's motion for partial summary judgment in which Visa sought to establish that it should be treated as a single entity as to authorization, clearing and settlement of Visa transactions.

The Court will address the specific facts relevant to this motion as they are pertinent to the analysis.

**ANALYSIS**

**A.    Legal Standard on Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Cattrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

A party moving for summary judgment who does not have the ultimate burden of persuasion at trial, must produce evidence which either negates an essential element of the non-moving party's claims or show that the non-moving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). A party who moves for summary judgment who does bear the burden of proof at trial, must produce evidence that would entitle him or her to a directed verdict if the evidence went uncontroverted at trial. *C.A.R. Transp. Brokerage Co., Inc. v. Darden*, 213 F.3d 474, 480 (9th Cir. 2000).

Once the moving party meets its initial burden, the non-moving party must go beyond the pleadings and by its own evidence "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). In order to make this showing, the non-moving party

must "identify with reasonable particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996). It is not the Court's task to "scour the record in search of a genuine issue of triable fact." *Id.* (quoting *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995). If the non-moving party fails to make this showing, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). A fact is "material" if it may affect the outcome of the case. *Id.* at 248. "In considering a motion for summary judgment, the court may not weigh the evidence or make credibility determinations, and is required to draw all inferences in a light most favorable to the non-moving party." *Freeman v. Arpaio*, 125 F.3d 723, 735 (9th Cir. 1997).

**B.      Single Entity Issue.**

This Court has already addressed many of the issues presented by First Data in its motion, only from a different procedural posture. In its previous order, the Court held that, as the moving party on establishing that it functioned as a single entity, Visa had not met its burden to demonstrate that the structure of the Visa system, even in the limited context of the promulgation and administration of the ACS system, has the characteristics of a single entity joint venture.

With the benefit of the Court's order denying Visa's motion for partial summary judgment seeking to establish that Visa functions as a single entity with respect ACS, First Data now asks the Court to find that Visa should, as a matter of law, be denied the affirmative defense that Visa functions as a single entity with respect to ACS. The same factors and analysis apply in this new procedural posture; however, First Data now bears the burden of demonstrating that there is no dispute of material fact that Visa fails to function as a single entity with respect to ACS.

The single entity inquiry is fact-specific and is dependent on the circumstances of each case. *See, e.g., Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1148 (9th Cir. 2003). The Court considers a number of factors in order to determine whether a particular corporate

3

structure functions as a single entity. First, the most common factor for finding that a joint venture functions as a single enterprise is the presence of a common, single and unified economic interest. In "the absence of economic unity, the fact that joint ventures pursue the common interests of the whole is generally not enough, by itself, to render them a single entity." *Id.* Second, "in the absence of economic unity, the fact that firms are not actual competitors is also usually not enough, by itself, to render them a single entity." *Id.* at 1148-49. Absence of actual competition may simply be a manifestation of the anticompetitive nature of the agreement itself, as where firms conspire to divide the market. *Id.* at 1149. Lastly, "the analogy to a single entity is weakened, and the resemblance to a collaborative venture is strengthened," where the individual members of the venture effectively control the decisions of the venture. *Fraser v. Major League Soccer, L.L.C.*, 284 F.3d 47, 57 (1st Cir. 2002).

**1.     Economic Unity.**

The most important factor in the determination of whether a joint venture functions as a single entity is whether the venture shares a single economic unity. "Where there is substantial common ownership, a fiduciary obligation to act for another entity's economic benefit or an agreement to divide profits and losses, individual firms function as an economic unit and are generally treated as a single entity." *Freeman*, 322 F.3d at 1148.

**a.     Substantial Common Ownership.**

At the time of Visa's original motion on this issue, the Court found that Visa lacked economic unity. At that time, Visa had not presented evidence to the Court demonstrating that the member banks share a common economic interest. Rather, the evidence before the Court at that time indicated, to the contrary, that the members banks stand in direct competition with one another, in various aspects, including, importantly, the pricing of the services for the processing of the member banks' credit and debit cards. (*See, e.g.*, Declaration of Todd Pickles in Support of First Data's Opposition to Visa's Motion for Partial Summary Judgment Establishing that Visa is a Single Entity ("Pickles Decl.") [Docket No. 864], Ex. 5 (Biller Depo. 32:15-33:5; 62:6-23), Ex. 18 (Dorsey Depo. 43:14-48:19; 52:20-53:5), Ex. 2 (Heasley Depo. 60:5-62:25), Ex. 21, at VUFD0301153 (Visa U.S.A. Board of Directors meeting executive summary), Ex. 39

4

(Phillips Depo. 39:2-40:9); *see also* Declaration of James Hinderaker in Support of Motion for Protective Order at ¶ 6 [Docket No. 522]; Declaration of David A. Tomlinson in Support of Motion for Protective Order at ¶ 4 [Docket No. 512]; Declaration of David P. Demanett in Support of Motion for Protective Order at ¶ 6 [Docket No. 517]; and Declaration of Vincent D'Agostino in Support of Motion for Protective Order at ¶¶ 9, 11, 12 [Docket No. 514].)

In response, Visa now submits evidence in an effort to demonstrate that Visa's joint venturers share economic unity. Visa argues that it has common ownership because its 14,000 members, although not commonly owned, do commonly own nearly a billion dollars worth of assets. (Declaration of Johnny Dorsey, Ex. A at 14, 21.) However, as far as the function-specific analysis required under *Freeman*, there is no indication from the full record now presented to the Court that the members of Visa have a common ownership of ACS, the function at issue. That is, although the venture as a whole has a significant financial worth, there is still no evidence to contradict the evidence proffered by First Data indicating that, as to the function of promulgation, administration and purchase of network processing services, or ACS, there is a common economic ownership among Visa's members. Rather, there is significant evidence to the contrary indicating that the individual member banks stand in direct competition with each other over the network processing services. Therefore, the undisputed evidence before this Court indicates that Visa's members do not share a common economic interest as to the function at issue and this factor weighs in favor of finding that Visa does not function as a single entity.

          **b.**    **Fiduciary Obligation to Act for Another Entity's Economic Benefit.**

Second, in the absence of common economic interest, Visa must raise a disputed issue of material fact regarding whether the member banks owe a fiduciary obligation to act for each others' economic benefit with respect to the provision, promulgation or purchase of ACS. *See Freeman*, 322 F.3d at 1148 (holding that, among other factors, when there is a "fiduciary obligation to act for another entity's economic benefit . . . individual firms function as an economic unit and are generally treated as a single entity.")

5

Visa now contends that it has presented evidence indicating that its members' nominees who sit on the Visa Board of Directors, act as fiduciaries to the corporate entity. (Declaration of Richard J. Mooney ("Mooney Decl."), Ex. C (Heasley Depo. 77:22-25), Ex. D (Biller Depo. 82:21-25).) The evidence submitted by Visa does not establish that, as to the function of purchasing or providing network processing services, the individual members maintain a fiduciary obligation to act for each other's economic benefit. The evidence that Board members owe fiduciary duties to the whole entity, does not indicate that each of the individual members has a fiduciary obligation to act for another entity's economic benefit with respect to the function at issue. *See Freeman*, 322 F.3d at 1148. In *Freeman*, the competing associations appointed the directors of the joint venture and maintained common interests, but the court held that "the fact that the joint venturers pursue the common interests of the whole is generally not enough, by itself, to render them a single entity." *Id.*

### c. Shared Profits and Losses.

Another factor in the analysis of whether a venture functions as a single entity is whether there exists an agreement among the venturers to divide profits and losses. *See Freeman*, 322 F.3d at 1148 (holding that, among other factors, where there is "an agreement to divide profits and losses, individual firms function as an economic unit and are generally treated as a single entity.")

Visa contends that the member banks share in the cost of operating their common assets and share in the losses assumed by the operation of those assets. (*See* Declaration of Benjamin Klein, PhD, ("Klein Decl."), ¶¶ 12b, 44, 45.) However, once again, Visa fails to address this issue in the context of the specific function at issue. The relevant evidence before the Court is not that Visa currently operates networking services and benefits from the profits and losses of providing that service, but rather that the members banks compete in the markets for which the network processing is a necessary input. Visa fails to distinguish the centralized ACS function from the setting of fees in *Freeman* in terms of the element of shared profits and losses. Just as the court held in *Freeman*, what matters here is whether the venturers' "profits . . . wind up under the same corporate mattress." *Freeman*, 322 F.3d at 1149. As to the function at issue,

6

because the member banks all compete in the credit and debit business, of which ACS is a necessary input, there is no dispute that the profits and losses associated with the banks' card businesses do not end up under the same corporate mattress. Because the analysis is function-specific, the Court is concerned with the profits and losses associated with the specific conduct at issue, and, unquestionably, the profits and losses of each separate member bank of which ACS is a necessary input are not shared as a single entity.

Because Visa bears the burden and because it has failed to identify any dispute of fact that distinguishes this case from the analysis of the relevant factors for economic unity in *Freeman*, the Court finds that First Data has carried its burden of demonstrating that Visa fails to function as a economically unified entity. In the absence of economic unity, the Court must examine whether the venturers function as actual or potential competitors as to the relevant function.[1]

### 2.     Competition Among Visa Members for ACS Services.

The second element the Court considers in order to assess whether a joint venture functions as a single entity is the existence of competition with one another and with other entities performing the same service. The Court may consider evidence of either actual or potential competition. *See Freeman*, 322 F.3d at 1148. Also, the fact that the venturers "are not actual competitors is also usually not enough, by itself to render them a single entity. Absence of actual competition may simply be a manifestation of the anticompetitive agreement itself, as where firms conspire to divide the market. Cases have required instead that the constituent entities be neither actual nor *potential* competitors." *Id.* at 1148-49 (citations omitted; emphasis in original).

The evidence in the record once again indicates that the members of the joint venture are in direct competition with one another, as well as in competition with other banks and financial

---

[1] Visa's contention that ACS is a basic core function that is indispensably done at the network level and that Visa's control over the functions and terms of the service repeats many of the same arguments on which Visa moved this Court for partial summary judgment on the same issue and which the Court found unpersuasive. Further, Visa's contentions relating to transaction costs, hold-up problems, and externalities goes to the analysis of whether or not Visa was justified in banning competition for the service. The arguments do not address the issue of whether Visa functions as a single entity.

7

institutions outside of the Visa system, including on the terms and conditions of their purchases of network processing.[2] The Court has already determined that the decision to ban the use of outside processors from the Visa system affects the ability of the member banks to compete with one another and to compete with other banks regarding the cost of processing credit cards, including, but not limited to, Visa-branded credit cards.

First Data presents a record to this Court replete with evidence of actual and potential competition among the member banks and with other entities over the disputed ACS service. (*See, e.g.*, Pickles Decl., Ex. 5 (Biller Depo. 32:15-33:5; 62:6-23), Ex. 18 (Dorsey Depo. 43:14-48:19; 52:20-53:5), Ex. 2 (Heasley Depo. 60:5-62:25), Ex. 21, at VUFD0301153 (Visa U.S.A. Board of Directors meeting executive summary), Ex. 39 (Phillips Depo. 39:2-40:9); *see also* Declaration of James Hinderaker in Support of Motion for Protective Order at ¶ 6 [Docket No. 522]; Declaration of David A. Tomlinson in Support of Motion for Protective Order at ¶ 4 [Docket No. 512]; Declaration of David P. Demanett in Support of Motion for Protective Order at ¶ 6 [Docket No. 517]; Declaration of Vincent D'Agostino in Support of Motion for Protective Order at ¶¶ 9, 11, 12 [Docket No. 514]; Declaration of Richard Davis in Support of Motion for Protective Order at ¶ 11 [Docket No. 515]; and Declaration of Eric Fox in Support of Motion for Protective Order at ¶ 7 [Docket No. 519].)

First Data having met its initial burden on this issue, Visa must proffer evidence which raises a dispute as to a material fact regarding the competition among Visa members for ACS services. It has not met this burden. For example, Visa proffers the testimony of various member banks to the effect that their interest in the alternate services offered by First Data was

---

[2] The fact that Visa's members stand in direct competition with one another and with members of, for instance, MasterCard, including competition for the cost of their respective processing services, is undisputed, insofar as Visa makes the same contention in other litigation and courts have so found based on the undisputed record. (*See, e.g., United States v. Visa U.S.A., Inc. (DOJ I)*, 163 F. Supp. 2d 322, 332-33 (finding that the members of Visa compete with each other on virtually every aspect of their business, including pricing, fees and finance charges, product features and other services for cardholders and merchants; *National Bancard Corp. (Nabanco) v. Visa U.S.A., Inc*., 596 F. Supp. 1231, 1253 (S.D. Fla. 1984) ("[T]o the extent possible, each member engages as an independent unit in economic competition with other VISA members with respect to various aspects of their common venture"); *see also* Pickles Decl., Ex. 3, at 5 (Visa's Opening Brief in appeal of DOJ matter).

8

negligible. (*See, e.g.*, Mooney Decl., Ex. L (Kastrick Depo. at 427:20-428:25); Ex. E (Biller Depo. 180:21-181:2); Ex. P (Abbott Depo. at 24:21-25:6); Ex. Q (Phillips Depo. 66:17-67:4); Ex. R (Dasenbrock Depo. at 69:9-16).) However, the fact that the banks have the *potential* to compete for ACS services is sufficient under the guiding analysis to indicate that Visa fails to function as a single entity. *See Freeman*, 322 F.3d at 1149-1150. Also, the fact that Visa members previously purchased network services from First Data indicates that they *actually* competed against one another at some level in this aspect of their business. Visa's contention that the alternative services offered by First Data were an historical anomaly does not alter the undisputed fact that actual competition existed. The evidence that only three member banks were interested in the more extensive pilot program offered by First Data may "simply be a manifestation of the anticompetitive agreement itself" or may well indicate that the alternative offer of network services is competitively unappealing. *See id.* at 1149. At this juncture, the Court can only surmise from the undisputed evidence before it that there has been in the past been some level of actual competition among the member banks for the services offered by First Data and that there is a potential for competition among the banks for those services in the future. Under the single entity analysis, the undisputed evidence indicates that there is actual and potential competition among the member banks for the ACS services. Therefore, this factors weighs against Visa's assertion of the affirmative defense of functioning as a single entity.[3]

### 3. Visa's Decision-Making Structure.

The third element the Court may consider to determine the single entity issue is whether individual members of the venture effectively control the decisions of the venture. *Fraser,* 284 F.3d at 57. The "analogy to a single entity is weakened, and the resemblance to a collaborative

---

[3] Again, Visa's contention that "free riding" is not the same as legitimate competition and that Visa's members may use outsourced ACS but still retain the benefits of Visa's investments, puts the cart before the horse. The defense of free riding should be made within the Section 1 analysis, not as a basis to avoid application of Section 1 altogether. *See, e.g., Chicago Prof. Sports Ltd. P'ship v. National Basketball Ass'n*, 961 F.2d 667, 674-75 (7th Cir. 1992).

venture strengthened" where the representative members of the venturers control the decision of the venture, "having the majority of votes on the managing board." *Id.*

The decision to ban the use of First Data as a processing service was made by unanimous decision of the board of directors of Visa. The evidence before the Court indicates that the Board is comprised of, at least in part, Visa's largest bank members, who, as independent financial decision-makers, voted to pass the ban on use of private processing services outside of VisaNet. (Pickles Decl., Ex. 38 (Depo. Ex. 216 at 0317451-52).) On the record before the Court on Visa's motion for partial summary judgment, the Court found that this factor weighed against a finding that Visa functions as a single entity by virtue of its resemblance to a collaborative venture. (*See* Court Order dated August 16, 2005, at 7, citing *Fraser*, 284 F.3d at 57.)

In opposition to First Data's current motion, Visa now proffers evidence that the members of the Board, acting in their fiduciary capacities, carefully and diligently made the unanimous determination to ban outsourcing of ACS. (*See* Opp. at 18-19.) On this record, there does not appear to be a disputed issue of fact about the bona fides of the decision to ban outsourcing the service. Rather, the undisputed evidence indicates that the competing members of the venture appointed a set of directors to sit on the Board and that the members of that Board voted to ban an alternative source for a necessary input of the business arena in which the individual banks have in the past or may in the future compete. Visa has proffered no evidence to raise a disputed issue of material fact as to the individual members' effective control of the venture.

The undisputed evidence before the Court indicates that, with respect to the function of ACS services, the members of Visa do not share a common unified economic interest and do stand in actual and potential competition with one another. Further, the evidence indicates that the decision-making structure of the venture resembles that of a collaboration by representatives

10

1  of Visa's largest members. Based on the full record before it, the Court GRANTS First Data's
2  motion for partial summary judgment denying Visa's single entity affirmative defense.[4]

**C.     Visa's Remaining State Law Claims.**

This Court previously dismissed Visa's trademark claims against First Data on the basis that Visa, U.S.A. lacked standing under both 15 U.S.C. § 1114 for trademark infringement and under 15 U.S.C. § 1525(a) for unfair competition. First Data now moves for dismissal of Visa's remaining state law claims on the theory that this Court lacks discretion to exercise pendent jurisdiction over those claims as a result of its dismissal of Visa's federal claims for lack of standing.

Under 28 U.S.C. § 1367(a), in any civil action in which the district court has original jurisdiction, the court shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III. Where the district court dismisses all federal claims on the merits, it has discretion whether to adjudicate the remaining claims. *Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001). However, where the court dismisses the federal claims for lack of subject matter jurisdiction, it has no discretion and must dismiss all claims. *Id.; see also Scott v. Pasadena Unified School District*, 306 F.3d 646, 664 (9th Cir. 2002) (holding that where the court found that plaintiff did not have standing to assert a federal claim, the court lacked subject matter jurisdiction and therefore had no discretion to retain supplemental jurisdiction over the pendent state law claims).

"A suit brought by a plaintiff without Article III standing is not a 'case or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the suit."

---

[4] The Court does not find it necessary to entertain further briefing from the parties on the effect of the Supreme Court's recent decision in *Texaco Inc. v. Dagher*, Nos. 04-805 and 04-814, slip op. (U.S. February 28, 2006). The *Dagher* Court held only that the *per se* rule does not apply to a joint venture's pricing of its own product. The pricing policy challenged in *Dagher* concerned price setting by a single entity, albeit in the context of a joint venture, and not a pricing agreement between competing entities with respect to their competing products. *Id.* at 4. The single entity issue at play in this case concerns whether the restraint in question limits venture members' ability to compete for services outside of the venture. Further, the *Dagher* Court specifically found that it did not need to address the alternative argument that Section 1 of the Sherman Act is inapplicable to joint ventures. *See id.* at 5, n.2.

11

*Cetacean Community v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004), citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998).  "Supplemental jurisdiction may only be invoked when the district court has a hook of original jurisdiction on which to hang it." *Teddy Bear*, 254 F.3d at 805.  "If the federal claim is dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication.  The dismissal means that there never was a valid claim within the court's original jurisdiction to which the state claims may be supplemental.  Therefore, the district court has no discretion to exceed the scope of its Article III power, and must dismiss the state law claims without prejudice." *Id.*

Finding that standing is "an essential . . . part of the case-or-controversy requirement of Article III," this Court dismissed Visa's trademark claims by order dated August 16, 2005.  (*See* Court Order dated August 16, 2005 at 4, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).)  The Court found that Visa, U.S.A.'s status as a licensee of the VISA marks owned by Visa International did not confer Visa U.S.A. standing under Section 32 or 43 of the Lanham Act.  (*Id.* at 4-5, 7-8, citing 15 U.S.C. §§ 1114(1), 1525(a).)

Although in dismissing Visa's federal trademark claims, the Court did not by necessity reach the issue of whether Visa possessed constitutional standing, the Court now finds that Visa could not meet the test for standing under Article III.  The analysis requires the Court to

> ask whether a plaintiff has suffered sufficient injury to satisfy the 'case or controversy' requirement of Article III.  To satisfy Article III, a plaintiff 'must show that (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Cetacean Community*, 386 F.3d at 1175 (internal citations omitted).  Because the Court found that Visa, U.S.A. did not retain a non-exclusive property interest in the disputed marks, the Court finds that Visa, U.S.A. cannot demonstrate it has suffered an injury in fact sufficient to confer constitutional standing upon it.  In addition, the Court finds that its basis for the dismissal of the trademark claims was not premised upon judge-made rules concerning prudential limitations on jurisdiction.  *See Nevyas v. Morgan,* 309 F. Supp. 2d 673, 678-79

12

(E.D. Penn. 2004) (distinguishing between constitutional and prudential standing considerations). Here, the Court found that plaintiff Visa, U.S.A. did not own legally cognizable, exclusive property rights in the trademarks at issue. Because this Court dismissed Visa's federal trademark claims on the basis that Visa, U.S.A. lacked a legally sufficient property interest in the trademarks to confer standing, there is no basis upon which Visa, U.S.A. has suffered an injury in fact, or "an invasion of a legally protected interest." *See Lujan*, 504 U.S. at 560. Visa, U.S.A. could not have suffered a cognizable injury under Article III because it did not maintain an enforceable right in the trademark it sought to protect.

Without a basis to maintain subject matter jurisdiction over Visa's federal claims, the Court lacks discretion to exercise supplemental jurisdiction over the pendent state law claims and therefore dismisses those claims without prejudice. *See Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (affirming district court's dismissal of state law claim on the basis that the court lacked jurisdiction to adjudicate claim where the federal copyright claim was dismissed on the basis that plaintiff was not the registered owner of the mark at issue) *affirming Warren v. Fox Family Worldwide, Inc*., 171 F. Supp. 2d 1057, 1074 n.41 (C.D. Cal. 2001); *see also Teddy Bear*, 254 F.3d at 806; *Scott*, 306 F.3d at 664.

Additionally, because a federal court may only grant declaratory relief in "a case of actual controversy within its jurisdiction," and the underlying claims do not enable the Court to exercise its jurisdiction, the Court lacks an independent basis for federal subject matter jurisdiction over the declaratory relief claim and dismisses that claim as a matter of law. *See* 28 U.S.C. § 2201; *see also Opera Plaza Residential Parcel Homeowners Ass'n v. Hoang*, 376 F.3d 831, 840 (9th Cir. 2004).

**CONCLUSION**

For the foregoing reasons, the Court HEREBY GRANTS First Data's motion for partial summary judgment denying Visa' single entity affirmative defense and GRANTS First Data's motion for summary judgment as to the remaining claims. The Court retains jurisdiction over First Data's counterclaims and this decision does not affect the continuation of the case now pending before this Court. *See Equitable Life Ins. Soc'y v. Equitable Life Assurance Soc'y*, 2004 U.S. Dist. LEXIS 19844, *9, citing *Holmes Group, Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826, 834 n.4 (2002).

**IT IS SO ORDERED.**

Dated: March 2, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE